**David C. WILSON, Plaintiff-Appellant,**

v.

**INTERCOLLEGIATE (BIG TEN) CONFERENCE ATHLETIC ASSOCIATION, an Unincorporated Association, et al., Defendants-Appellees.**

No. 81–2154.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1982.

Decided Jan. 26, 1982.

Rehearing and Rehearing En Banc Denied March 4, 1982.

Robert I. Auler, Urbana, Ill., for plaintiff-appellant.

Charles L. Palmer, George V. Eighmey, Champaign, Ill., Byron L. Gregory, McDermott, Will & Emery, Chicago, Ill., for defendants-appellees.

Before BAUER, Circuit Judge, MARKEY;* Chief Judge, and POSNER, Circuit Judge.

* Of the United States Court of Customs and Patent Appeals.

POSNER, Circuit Judge.

This case, on the view we take of it, turns on the following question under 28 U.S.C. § 1446(b): if a case initially filed in state court is removable to federal court but the defendant waives his right to remove, under what circumstances will that right revive if the plaintiff subsequently amends his complaint to add new federal claims?

The plaintiff, David C. Wilson, today a quarterback for the New Orleans Saints, was in 1980 a transfer student at the University of Illinois from a junior college in California. The principal defendants are the Intercollegiate (Big Ten) Conference of Faculty Representatives, an association of ten midwestern universities, and those universities. The rules of the Conference, so far as relevant here, (1) limit a Big Ten student to four seasons of playing college football, and (2) declare him ineligible in any season if he has failed to accumulate a specified minimum number of course credits (the number depends on what year of college he is in). When Wilson entered the University of Illinois in February 1980, he was in his third year of college and therefore ineligible to play beyond the (fall) 1980 season; and because the University refused to give him full credit for all the courses he had taken at his junior college, he was ineligible to play even in 1980 for want of the requisite accumulated credits. He sought a waiver of both rules, but after various interim decisions unnecessary to detail here the Conference refused to waive either one.

In August 1980, shortly before the beginning of the 1980 college football season, Wilson brought this suit in an Illinois state court. His complaint alleged that the Conference's refusal to waive its rules denied him equal protection of the laws and due process of law, in violation of both the United States and Illinois Constitutions. The complaint sought injunctive relief and damages. The defendants did not attempt to remove the case to federal court. The state court, Judge Clem, issued a preliminary injunction in Wilson's favor on September 5, 1980, holding that he had established a likelihood of prevailing on the merits of his constitutional claims. Judge Clem later dissolved the preliminary injunction when the defendants presented new evidence bearing on Wilson's academic progress (or rather lack thereof), but the Illinois Appellate Court reinstated the preliminary injunction on September 19 and the Illinois Supreme Court refused to review the appellate court's action. Because of the injunction, Wilson was able to play the whole 1980 football season.

We come to the critical stage of the proceedings. In March 1981 Wilson amended his complaint by adding several additional counts (and also by quantifying for the first time the damages he was seeking). The amended complaint maintained the focus of the original complaint on the Conference's refusal to waive its rules in Wilson's favor, but this refusal was now alleged to violate not only the equal protection and due process clauses of the U. S. and Illinois Constitutions but also several federal civil rights statutes (42 U.S.C. §§ 1981, 1983, and 1985); Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. (which deals with sex discrimination); the First Amendment to, and the full faith and credit clause of, the U. S. Constitution; and the Illinois Antitrust Act, Ill.Rev.Stat., ch. 38, § 60–3. The defendants promptly filed a new petition to remove the case to federal district court. After denying Wilson's motion to remand the case to the state court, 513 F.Supp. 1062 (C.D.Ill.1981), the district court granted summary judgment for the defendants on all counts and dismissed the complaint. Wilson appeals both from the order denying his motion to remand the case to state court and from the dismissal of the complaint.

If the only interests at stake in this litigation were the private interests of the parties, we might agree with the district judge that the case was properly removed to federal court. The original complaint was removable, notwithstanding the presence of a state claim in the complaint. The state claim was so closely related to the federal claim that if Wilson had brought the case in federal court the court would

have had pendent jurisdiction over the state claim. Therefore the entire complaint was within the original jurisdiction of the federal courts and hence removable under 28 U.S.C. § 1441(a). See, e.g., *Hazel Bishop, Inc. v. Perfemme, Inc.*, 314 F.2d 399, 402–03 (2d Cir. 1963).

The defendants chose not to remove. They must have regretted this decision as they saw the case progress through the state-court system favorably to Wilson. Then Wilson (or rather his attorney) made what must have seemed to the defendants a colossal tactical blunder: amending the complaint to add a scattershot of new federal claims that no doubt struck the defendants (as they struck the district court) as insubstantial, and thereby reviving their right to remove and giving them a chance to escape from what had turned out to be an unfavorable state forum. Wilson was hoist with his own petard—and there we would leave him were it not for the presence in this case of policy concerns, jurisdictional in nature and hence not waivable, relating to the power of the federal courts to divest state courts of jurisdiction over cases properly submitted to them.

■ Section 1446(b) of the Judicial Code provides that if a case filed in a state court, though removable to federal court, is not removed by petition filed within 30 days of the receipt of the complaint, it is not removable thereafter. The courts, however, have read into the statute an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute "substantially a new suit begun that day." *Fletcher v. Hamlet*, 116 U.S. 408, 410, 6 S.Ct. 426, 29 L.Ed. 679 (1886); see 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3732, at 727–29 (1976), and cases cited therein. It is idle to pretend that the *Fletcher* test or any of the alternative formulations that the courts sometimes use (e.g., "an entirely new and different suit," *Cliett v. Scott*, 233 F.2d 269, 271 (5th Cir. 1956)) are self-defining. The right to revive must be determined in each case with reference to its purposes and those of the

30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibilities between state and federal courts.

The purpose of the 30-day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court. These considerations might be overborne in a case where a plaintiff, seeking to mislead the defendant about the true nature of his suit and thereby dissuade him from removing it, included in his initial complaint filed in state court an inconsequential but removable federal count unlikely to induce removal and then, after the time for removal had passed without action by the defendant, amended the complaint to add the true and weighty federal grounds that he had been holding back. Cf. *Powers v. Chesapeake & O. Ry.*, 169 U.S. 92, 99, 18 S.Ct. 264, 266, 42 L.Ed. 673 (1898); *Miles v. Stark*, 440 F.Supp. 947 (N.D.Tex.1977). But this case presents the opposite pattern. Wilson tendered his fundamental federal claim, that defendants had violated his equal protection and due process rights under the U. S. Constitution, at the very outset. His amended complaint added one purely procedural count which clearly did not alter the character of the suit (the count based on 42 U.S.C. § 1983, which is a vehicle for redressing substantive violations of the Constitution, including equal protection and due process violations) and a number of other federal counts, all apparently makeweights and some never pressed at all. It seems inconceivable to us (and defendants do not argue) that Wilson's lawyer adopted this pleading sequence in order to discourage the defendants from exercising their right to removal, or that it could have had that effect.

But it would be too narrow a construction of the right of revival to limit it to cases where the plaintiff deliberately holds back his strong federal cards hoping to induce the defendant to waive his right to remove the original complaint. Amendments might fundamentally alter a complaint not because the plaintiff had been trying to mislead the defendant but because new facts had come to light in the course of pretrial discovery. In such a case—where the amended complaint in effect begins a new case—using the 30-day limitation in section 1446(b) to bar removal would not serve the purposes of the limitation in any significant way. The defendant's tactical advantage would be small because whatever favor or disfavor the state court had shown to his defense of the original complaint need not carry over to an amended complaint which by hypothesis kicks off an essentially new lawsuit. And judicial economy would not be promoted by forbidding removal because, again by hypothesis, the defendant is seeking not to start an old case over in a new court but to litigate a new case in the new court.

■ The amendments in the present case did not change the original complaint so drastically that the purposes of the 30-day limitation would not be served by enforcing it. The amendments did not change the target of Wilson's attack or the nature of the relief sought. He still wanted the rules limiting his eligibility changed or waived and he still sought injunctive and monetary relief for the Conference's refusal to do so. The basic legal theory of his action—that the Conference rules, as applied to him, were unfair and discriminatory and that he had not been given a fair hearing in his efforts to obtain a waiver of them—was unchanged. There was thus no "abandonment of the original for a new cause of action," as in *Henderson v. Midwest Refining Co.*, 43 F.2d 23, 25 (10th Cir. 1930), or as in *Craig Food Indus. v. Taco Time Int'l, Inc.*, 469 F.Supp. 516, 521 (D.Utah 1979), where the amended complaint changed a diversity case into a federal-question case. The amendments here merely added constitutional and statutory references purport-ing to further show that the treatment of which Wilson complained was unlawful. That an additional state claim, based on the Illinois Antitrust Act, was also added to the complaint is not a ground for removal to federal court.

In fact this case illustrates very nicely the purposes behind the 30-day limitation. Removal to federal court long after the original complaint had been filed and substantial proceedings—unfavorable to the defendants—had taken place in the state courts interrupted an active litigation, thus reducing judicial economy, and delivered a substantial and unearned tactical advantage into the hands of the defendants. It is more likely that the defendants removed the case because they were doing badly in the state courts than because they felt that the amended complaint confronted them with a different case from the one they had been fighting in those courts. Nor, as we said before, is there any basis for supposing that the original complaint was designed to lull the defendants into waiving their right to remove by concealing from them the true nature and dimensions of the plaintiff's federal case.

■ We do not wish to be understood as proposing new formulas for deciding when the right to remove revives after the 30-day deadline has passed. The issue does not lend itself to decision by verbal talismans. The intelligent decision of particular cases requires instead a sensitivity to the purposes of both the 30-day limitation and its judicially engrafted exception. Another kind of sensitivity is also required of federal courts in dealing with this problem: sensitivity to the danger of encroaching unduly on the authority of the state courts. This case illustrates that danger. A state constitutional issue that began by being litigated in the state-court system, favorably to the claimant be it noted, ended up by being decided unfavorably to the claimant by a federal district judge. It is true that even if the case had been properly removed to federal court, the court could have declined to exercise its pendent jurisdiction and re-

manded the state claims. And a concern with the value of federalism involves a touch of irony in this case given the nature of the particular state claims: Judge Clem, in construing the equal protection and due process clauses of the Illinois Constitution, relied entirely on cases construing the counterpart clauses of the Fourteenth Amendment to the U. S. Constitution; and the Illinois Antitrust Act incorporates by reference, to the extent applicable, decisional law under the federal antitrust statutes. Ill.Rev.Stat., ch. 38, § 60–11. But although the interest of the state courts in adjudicating the particular state-law claims in this case may be somewhat attenuated, this feature of the case is idiosyncratic. It does not convert the state claims into federal claims (see Currie, Federal Jurisdiction 108–10 (2d ed. 1981)) and it does not weaken our conviction that the district courts, in interpreting and applying section 1446(b), should bear in mind, and where possible avoid, the frictions in a harmonious federal system that result when litigation involving state-law as well as federal-law issues is abruptly shifted into federal court and the state proceedings, including here a preliminary adjudication on the merits, are set at naught.

The order of the district court denying the motion to remand is therefore reversed and the case remanded to that court for entry of an appropriate order remanding the case to the state court. The district court's judgment dismissing the complaint on the merits is vacated for want of federal jurisdiction.

So Ordered.