James FRYE, et al., Plaintiffs,

v.

GENERAL FINANCE CORPORATION, et al., Defendants.

No. 83 C 5001.

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1983.

Kenneth S. Borcia, Libertyville, Ill., for plaintiffs.

Lawrence X. Pusateri and Craig A. Varga, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER *

SHADUR, District Judge.

This Court is called on to decide the propriety of removal to federal court of this action by a plaintiff class (37 of them named at latest count) against various financial institutions and their employees. Plaintiffs' original Complaint, filed April 1[1] in Lake County Circuit Court, sought relief for intentional infliction of emotional distress on the ground defendants had collected or sought to collect debts previously discharged in bankruptcy, in violation of the United States Bankruptcy Code (particularly its automatic stay provision, 11 U.S.C. § 362). After defendants had moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, plaintiffs dismissed the Complaint and obtained leave to file an amended complaint. They filed their Amended Complaint June 21, charging defendants' conduct violated the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., and various Illinois laws (consumer finance, consumer fraud and related insurance statutes).

On July 20 defendants removed the case to this Court, and plaintiffs have now moved for remand on two theories:

1. Defendants' removal petition was untimely, not having been filed within 30 days of defendants' receipt of the Complaint as required by 28 U.S.C. § 1446(b).[2]

2. Federal jurisdiction does not extend to the entire Amended Complaint, which includes state law claims.

Because the motion is sustainable on the first ground, no resolution of the second is needed.[3]

In response to plaintiffs' timeliness argument defendants concede the removal petition was not filed within 30 days of their receipt of the Complaint. But they argue the Amended Complaint rather than the Complaint is the "initial pleading" from which the 30 days is counted under the first paragraph of Section 1446(b):

The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Because the petition was filed less than 30 days after receipt of the Amended Complaint, defendants say their petition was timely.

In support of that proposition defendants urge two claimed differences between the Complaint and the Amended Complaint, either of which would render the latter the "initial pleading" in Section 1446(b) terms:

1. They say the Complaint was not removable and the Amended Complaint is. Section 1446(b)'s second paragraph expressly provides the 30 days does not

---

* As this opinion reflects, the analysis necessary for disposition of the issues involves the complex interaction of a number of concepts. Unfortunately the conceptualization owes nothing to counsel's contribution. Instead the vast bulk of the lawyering had to be done by this Court's law clerk Thomas Shreve, Esq.

1. All relevant dates in this opinion are in 1983.

2. All subsequent citations to Title 28 will simply take the form "Section—."

3. It may however be observed the second theory rests on a false premise. There is no force to the suggestion a state court can hear both the state and federal claims in the Amended Complaint while this Court can hear only federal claims, for the state law claims could of course be an appropriate subject of pendent federal jurisdiction.

begin to run until defendants receive a removable complaint.

2. Even if the Complaint were considered removable, they say the Amended Complaint was "substantially a new suit begun that day," *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir.1982) (quoting *Fletcher v. Hamlet,* 116 U.S. 408, 410, 6 S.Ct. 426, 427, 29 L.Ed. 679 (1886)), thus causing the 30 days to begin running again.

Because the gravamina of the Complaint and the Amended Complaint are in fact substantially the same, neither of those assertions withstands analysis.

### Removability of the Successive Complaints: A Comparison

■ For the first arrow in their quiver defendants rely on the second paragraph of Section 1446(b):

If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

They argue the Complaint was not removable because its claims were exclusively subject to federal jurisdiction (thus depriving the state court of jurisdiction even to transfer the case),[4] while the Amended Complaint is removable because subject to the concurrent jurisdiction of the state and federal courts. That contention forces a look at both complaints in terms of exclusivity of federal jurisdiction or concurrence of state and federal jurisdiction.

That determination as to each complaint depends on whether it arises under the federal bankruptcy law or is merely related to cases arising under the bankruptcy law. Section 1471(a) confers on federal courts original and exclusive jurisdiction over "all cases under title 11," the bankruptcy statute.[5] By contrast, under Section 1471(b) federal jurisdiction is original but not exclusive (and by implication is concurrent with state jurisdiction)[6] over proceedings "arising in or related to cases under title 11."

Understandably (given the recent enactment of the Code), case law has as yet done little to illuminate the difference between Section 1471(a) jurisdiction and Section 1471(b) jurisdiction. Most helpful in that respect is *Emerald City Records, Inc. v. First Media Corp.,* 9 B.R. 319, 320 (Bkrtcy. N.D.Ga.1981), holding a claim of "malicious use of civil process stemming from the ini-

---

4. *Illinois v. Kerr-McGee Chemical Corp.,* 677 F.2d 571, 575 (7th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982), recently reaffirmed defendants' proposition that a federal court cannot acquire jurisdiction on removal if the state court had no jurisdiction in the first place:

> As others have noted, this is exactly the type of "legal *tour de force*" that lay persons abhor.... However, the rule is so well-entrenched now that it would take legislative action to dislodge it.

5. Matters are perhaps not quite so simple as the text suggests, though no different result would obtain in this case in any event. Section 1471 is one of the provisions of the Bankruptcy Reform Act of 1978 (the "Code") scheduled to take full effect April 1, 1984, while in the meantime the Code's transitional provisions (Pub.L. 95–598 §§ 401–11, 92 Stat. 2682–8) appear to make its jurisdictional allocations (like Section 1471) currently applicable. See *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 56, 102 S.Ct. 2858, 2864, 73

L.Ed.2d 598 (1982). At the same time *Northern Pipeline* teaches it may not be wholly safe to accept all those jurisdictional allocations on their face. But the result here would be identical if Section 1471 were not involved at all, so the text's discussion of that Section did not apply. In that case this Court would have to look elsewhere for its source of power (for we must always remember federal courts are courts of limited—not general—jurisdiction). Only Section 1331 ("arising under the ... laws ... of the United States") would fill the bill, and the later portion of the text discussion dealing with that section would apply directly rather than by analogy. As indicated at the beginning of this footnote, the ultimate destination (though not the analytical route) of remand would be the same.

6. This opinion will use "concurrent jurisdiction" to refer to grants to federal courts of "original but not exclusive jurisdiction."

tiation of an involuntary bankruptcy proceeding" is subject to Section 1471(b) concurrent jurisdiction. But *Emerald City's* rejection of exclusive jurisdiction did not compare Sections 1471(a) and 1471(b), stating only (*id.* at 320) the cause of action "is related to a case under title 11 that is currently pending in this court."

This Court therefore turns to cases interpreting other similarly worded federal jurisdictional statutes in search of further guidance. Two such statutes are Sections 1331 and 1338(a):

 1. Section 1331 confers *concurrent* federal jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."

 2. Section 1338(a) confers *exclusive* federal jurisdiction over "any civil action arising under any Act of Congress relating to patents, plant variety protection, [or] copyrights."

Like Section 1471(a), both sections use the word "under" to describe the relationship between the actions over which jurisdiction is conferred and the federal law those actions concern. Sections 1471(a) and 1338(a) confer exclusive jurisdiction, while Section 1331 confers concurrent jurisdiction.

Justice Holmes' often-quoted definition of "arising under" appeared in *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916):

A suit arises under the law that creates the cause of action.

However, *Franchise Tax Board v. Construction Laborers Vacation Trust for Southern California,* —— U.S. ——, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (citations omitted) found later cases interpreting Section 1331 have defined "arising under" more broadly:

We have often held that a case "arose under" federal law where the vindication of a right under state law necessarily turned on some construction of federal law, . . . and even the most ardent proponent of the Holmes test has admitted that it has been rejected as an exclusionary principle. . . . Leading commentators have suggested that for purposes of § 1331 an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973) (hereinafter Hart & Wechsler); cf. *T.B. Harms Co., supra* ("a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law").

If that type of Section 1331 analysis were applied to Section 1471(a), *both* the Complaint and the Amended Complaint would be subject to the federal courts' exclusive jurisdiction. Both Complaint ¶¶ 11 and 13 and Amended Complaint Count I ¶¶ 2, 3, 4, 10 and 11 and Count III ¶ 2 disclose plaintiffs must "establish both the correctness and the applicability to [their] case" of propositions of federal bankruptcy law.

On the other hand, Section 1338(a) cases seem to have pretty much retained Justice Holmes' "creation of the cause of action" test. *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), employing language approved in *Franchise Tax Board,* 103 S.Ct. at 2853, held in patent cases "the party who brings the suit is master to decide what law he will rely upon."[7] If a question whether

---

**7.** *Franchise Tax Board, id.,* distinguished that "often repeated" principle from cases brought in areas where "the preemptive force of [federal law] is so powerful as to displace entirely any state cause of action." See *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 677 [94 S.Ct. 772, 782, 39 L.Ed.2d 73] (1974) (ejectment suits based on Indian title); *Avco Corp. v. Aero Lodge No. 735, IAM,* 390 U.S. 557, 560 [88 S.Ct. 1235, 1237, 20 L.Ed.2d 126] (1968) (suits for violation of contract between employer and labor organization). Defendants seek to bring within that latter exception all civil suits concerning federal bankruptcy law, invoking *International Shoe Co. v. Pinkus,* 278 U.S. 261, 265 [49 S.Ct. 108, 110, 73 L.Ed. 318] (1929) (recently cited by *In re Warren,* 7 B.R. 201, 205 n. 1 (Bkrtcy.N.D.Ala.1980)):

a defendant's conduct constitutes patent infringement is legitimately at issue,[8] the patent holder may choose to pursue either state or federal remedies, and jurisdiction resides in the courts of the government creating the remedies sought.[9]

If that type of Section 1338(a) analysis were applied to Section 1471(a), *neither* the Complaint nor the Amended Complaint would be subject to exclusive federal jurisdiction. In both Complaint ¶ 12 and Amended Complaint Count I ¶ 12, Count II ¶¶ 6 and 8 and Count III ¶ 2 plaintiffs seek state and non-bankruptcy federal remedies, and thus they do not "rely upon" federal bankruptcy laws for relief.

Thus the choice between Section 1331 analysis and Section 1338(a) analysis might lead to different conclusions about the scope of Section 1471(a). But it is really unimportant whether or not this exegesis of the possible statutory construction has parsed the provisions correctly. What the discussion demonstrates beyond doubt is that *whichever* analysis is adopted, this case must be remanded. Either analysis necessarily results in the rejection of defendants' argument, which relies on the premise there is exclusive federal jurisdiction over the Complaint but concurrent jurisdiction over the Amended Complaint. Section 1331-type construction of Section 1471(a) leads to the conclusion both complaints are subject to *exclusive* federal jurisdiction, while the suggested Section 1338(a)-type analysis leads to the conclusion both complaints are subject to *concurrent* jurisdiction.

What follows then is necessarily dictum in the classic sense, for it is unnecessary for this Court to make a choice between the two alternatives to reach the basic decision of remand in this case. All the same it would seem more plausible to adopt Section 1338(a) analysis as dispositive in interpreting Section 1471(a)—and thus to find both complaints subject to concurrent jurisdiction. Sections 1338(a) and 1471(a) are similar in that both assign exclusive jurisdiction to federal courts, while Section 1331 assigns concurrent jurisdiction.

That exclusive v. concurrent distinction is important to precisely the cases about which Section 1331 analysis and Section 1338(a) analysis disagree: claims involving a federal question but seeking relief provided by state law. If such claims were subject to exclusive federal jurisdiction, state courts would never have the opportunity to decide whether state law provides a remedy for such claims, and the invocation of state remedies would be nothing more than a fiction: Only the federal courts

---

The power of Congress to establish uniform laws on the subject of bankruptcies throughout the United States is unrestricted and paramount. Constitution, Art. I, § 8, cl. 4. The purpose to exclude state action for the discharge of insolvent debtors may be manifested without specific declaration to that end; that which is clearly implied is of equal force as that which is expressed.

It would involve an impermissible leap to extend (as defendants would) that undeniable proposition to the creation of a preemptive federal common law controlling all civil matters *related* to bankruptcies and reorganizations:

1. By its terms *Pinkus* extends only to the bankruptcy proceedings themselves, not to civil suits about bankruptcies.

2. Plainly state-created rights concerning bankruptcies do exist. See *Northern Pipeline,* 458 U.S. at 71, 102 S.Ct. at 2871: But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights. . . .

*Cf. Franchise Tax Board,* 103 S.Ct. at 2854–55, declining to extend the preemptive concept of *Avco* to ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A)).

**8.** If the issue of patent infringement is not legitimately before a federal court, *Milprint, Inc. v. Curwood, Inc.,* 562 F.2d 418, 420 (7th Cir.1977) negates federal jurisdiction altogether (in the "arising under" sense).

**9.** "The decisions obviously permit a patent owner in many situations to exercise a choice whether to resort to a federal or a state court." Bator, Mishkin, Shapiro & Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 878 (2d ed. 1973). "It frequently is reiterated in patent cases that the plaintiff is master of his claim and can choose whether to state a claim for infringement of the patent or a claim for breach of a contract." 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3582, at 550–51 (1975).

would really create, define and administer such remedies. Conversely if such claims were subject to concurrent jurisdiction, state courts would have the opportunity to decide them, and federal courts would be bound to follow those decisions when ruling on the propriety of the state remedies sought. Thus the prayer for relief under the bankruptcy law, and not the presence of a bankruptcy question, determines the existence of exclusive jurisdiction under Section 1471(a).[10]

All roads do lead to Rome. Because the Complaint and the Amended Complaint cannot be distinguished on the basis of their removability, defendants' first argument fails.

### Removability of the Amended Complaint as "Substantially a New Suit"

Alternatively defendants invoke the teaching of *Wilson,* 668 F.2d at 965 that Section 1446(b) is limited by "an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute 'substantially a new suit begun that day.' " As our Court of Appeals pointed out (*id.*), the language of that exception is not "self-defining," but Defendants' Mem. 6 n. 2 contends "One cannot escape the altogether different thrust of the amended complaint.... "

There are indeed dissimilarities between the Complaint and the Amended Complaint. Defendants' Mem. 6 n. 2 correctly points out the Amended Complaint adds 36 named plaintiffs[11] and three defendants.[12] And while the only misconduct pleaded in Complaint ¶9 was the sending of "a notice of intention to serve a wage assignment demand," the Amended Complaint alleged drafting of loan agreements in violation of

the federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* and state consumer finance and insurance law statutes.

Nonetheless the gravamina of the two complaints—their vital essences—are precisely the same: Defendants' consumer indebtedness collection practices are unlawful because they conflict with the provisions of plaintiffs' discharges in bankruptcy. Unquestionably the Complaint provided the defendants notice of that claim against them, and "the amendment was within the normal scope of equity practice to enlarge upon, or to set forth more accurately, the cause of action described in the original complaint," *Garden Homes, Inc. v. Mason,* 143 F.Supp. 144, 145 (D.Mass.), *aff'd on other grounds,* 238 F.2d 651 (1st Cir.1956). In short plaintiffs did not, as *Wilson,* 668 F.2d at 965 made relevant, sandbag their case by withholding "the true and weighty federal grounds that [they] had been holding back."

■ *Wilson* suggests (*id.*) Section 1446(b) is based on a waiver theory:

The purpose of the 30-day limitation is twofold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

All the originally-joined defendants in fact waived removal. Though the Complaint gave them notice of the important federal grounds on which it rested,[13] instead of

---

**10.** This conclusion is consistent with the holding in *Emerald City.*

**11.** That addition is irrelevant because the Complaint was stated as a plaintiff class action, and all the newly-named individuals are members of the class.

**12.** All three added individuals were the employees of original corporate defendants. They assertedly participated in the alleged violations.

Both added corporate defendants are alleged subsidiaries of one of the original corporate defendants. All the additions, individual and corporate, are irrelevant because of the principles stated at the end of this section of this opinion.

**13.** Indeed their ground for seeking its dismissal was "lack of [state court] jurisdiction, since the acts complained of by Plaintiff are matters ex-

filing promptly for removal they moved for dismissal of the Complaint. Having won that initial battle in state court,[14] they cannot obtain an extension of their time to petition for removal, relying on the notion they had no earlier opportunity to choose between a state and a federal forum. Because the originally-joined defendants thus waived removal, the newly-joined defendants cannot obtain removal either, for not all defendants can join in the removal petition.[15]

### Conclusion

Plaintiffs' motion to remand is granted, because defendants' removal petition was not timely filed. Costs in this Court are assessed against defendants.

---

clusively reserved to the jurisdiction of the federal bankruptcy courts."

14. When counsel appeared in state court on defendants' motion to dismiss, the court initially ruled in defendants' favor. Then plaintiffs asked and obtained leave to file an amended complaint promptly, and the court vacated its ruling of that day dismissing the Complaint.

15. 14 Wright, Miller & Cooper § 3732, at 1983 supp. 264–65 discusses the requirement all defendants must join the petition for removal in this context, where some defendants are joined after expiration of the 30-day removal period.