Louis JOHNSON, Carolyn Newell Johnson, Gulf Machinery Sales and Engineering Corp., and David R. Walker, Individually, Plaintiffs,

v.

HEUBLEIN, INC., Canandaigua Wine Company, Inc., and Walter Maslowski a/k/a and d/b/a SETC and/or SETC, Inc., and/or Salisbury, Etc., Individually.

Civil Action No. 3:97-CV314BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 27, 1997.

Stephen M. Maloney, Madison, MS, for plaintiffs.

Allan P. Bennett, Ricky G. Luke, Virginia Smith Gautier, Watkins, Ludlam & Stennis, Jackson, MS, for defendants.

*OPINION AND ORDER*

BARBOUR, District Judge.

This cause is before the Court on the following motions: (1) Plaintiffs' Motion to Remand; (2) Plaintiffs' Rebuttal Motion to Remand; and (3) Motion to Strike Rebuttal Motion to Remand filed by the Defendants Heublein, Inc. ("Heublein") and Canandaigua Wine Company, Inc. ("Canandaigua"). Having considered the Motions, the Defendants' Response to the Motion to Remand,[1] all attachments to each, supporting and opposing memoranda, and the entire court file in this matter, the Court finds that the Motion to Remand and the Rebuttal Motion to Remand are not well taken and should be denied. Because the Court considered the materials submitted in conjunction with the Rebuttal Motion to Remand, the Court finds that the Defendants' Motion to Strike Rebuttal Motion to Remand should also be denied.

I. *Factual Background and Procedural History*

Louis Johnson and Carolyn Johnson ("the Johnsons") made a series of loans to Gulf Machinery Sales & Engineering Corporation ("GSE"), in exchange for which they received Promissory Notes and an alleged security interest in various equipment, including an alleged interest in an evaporator (hereinafter "the Evaporator"), to be manufactured by GSE. David R. Walker ("Walker"), an officer of GSE, personally guaranteed the GSE debt to the Johnsons.[2]

In an entirely separate transaction, in November, 1992, Heublein entered into an agreement with GSE for the construction of the Evaporator to be shipped to the Heublein Mission Bell Winery in Madera, California. Heublein is a Connecticut corporation and is a major distiller and marketer of wines and liquors. The preliminary fabrication of the Evaporator was to be performed by GSE at its facilities in Florida. As a part of the contract between GSE and Heublein, GSE

---

1. Defendants, as used throughout this opinion, refers only to Defendants Heublein and Canandaigua.

2. The first Promissory Note between the Johnsons and GSE was executed on December 9, 1992, in the principal sum of $150,000.00. Subsequent Promissory Notes, a total of five, were executed over the course of the next several years, the last of which was executed on June 9, 1995, in the principal sum of $190,000.00. Walker personally guaranteed the payment of the indebtedness represented by the five Promissory Notes executed by GSE in favor of the Johnsons.

granted Heublein a security interest in the Evaporator.[3] Heublein perfected this security interest by filing a UCC financing statement in the office of the Secretary of State of Florida.[4] Subsequent to the delivery of the Evaporator to the Mission Bell Winery, Heublein sold this winery to Canandaigua,[5] together with a substantial portion of the related equipment in the winery, including the Evaporator.

On October 25, 1995, the Johnsons filed a Complaint ("the original Complaint") in the Circuit Court of Madison County, Mississippi ("the state court action"), naming GSE, Walker, Heublein, Canandaigua and Walter Maslowski a/k/a and d/b/a SETC and/or SETC, Inc. and/or Salisbury, Etc., Individually ("the Maslowski entities") as Defendants in that action.[6] In the original Complaint, the Johnsons alleged that GSE and Walker defaulted on their obligations under the Promissory Notes and requested $198,726.37, plus interest, attorneys' fees and punitive damages in the sum of $600,000.00. The Johnsons also claimed that GSE was in default under the terms of three Security Agreements executed in conjunction with the Promissory Notes purporting to give the Johnsons a security interest in certain "Collateral," including the Evaporator. The Johnsons filed a UCC financing statement with the Florida Secretary of State on June 10, 1994, to perfect their interest in, *inter alia*, the Evaporator.[7] This Financing Statement, the first UCC filing by the Johnsons regarding the Evaporator, was filed over 17 months after the filing by Heublein of its UCC financing statement and over 10 months after the Evaporator had been shipped to the Heublein facility in Madera, California.

In the Original Complaint, the Johnsons also asserted claims against Heublein and Canandaigua for conversion of the Evaporator. The Johnsons claimed a security interest in the Evaporator and asserted that the continued possession of this piece of equipment by Heublein, and subsequently, Canandaigua, constituted conversion. Original Complaint at 5–6, ¶¶ 25–28.

The only allegations in the Original Complaint concerning the Maslowski entities are contained in paragraph 23 which states as follows:

> Plaintiffs are informed and believe, and on the basis of such information and belief allege, that Defendant Maslowski is the actual agent and alter-ego of Defendants GSE and Walker and, as such, is as responsible individually to Plaintiffs for the relief requested in this Complaint as are Defendants GSE and Walker, and jointly and severally with them.

Original Complaint at 5, ¶ 23. The Johnsons have since submitted the affidavit of Plaintiff Louis Johnson stating that all of his dealings with GSE, including the wiring of the money secured by the Promissory Notes, were conducted through Maslowski and/or one of the other named aliases for this Defendant. Affidavit of Louis Johnson, attached as Exhibit B to Plaintiffs' Rebuttal Motion to Remand.

The Court notes that there was complete diversity between the parties at this juncture of the proceedings. The Johnsons are residents of Mississippi, and all of the named Defendants are residents of another state. According to Heublein and Canandaigua, however, they were unable to locate Maslowski to obtain his consent to removal. Furthermore, attempts to obtain the consent of GSE and Walker to remove the action to federal court were equally unsuccessful.[8]

---

**3.** The Security Agreement between GSE and Heublein is dated December 14, 1992.

**4.** Although the UCC financing statement is not dated, it is attached as Exhibit A to the December 14, 1992, Security Agreement executed by GSE and Heublein.

**5.** Canandaigua is a Delaware corporation with its principal place of business in New York and is a major producer and distributor of wines.

**6.** GSE, Walker and the Maslowski entities are all residents of Florida for diversity purposes.

**7.** Defendants assert that the "subsequent UCC filing by the Plaintiffs failed even to name the Evaporator as one of its purported objects." Defendants' Memorandum in Opposition at 7.

**8.** Attached to their Rebuttal Motion to Remand, the Plaintiffs have submitted the affidavit of Tom Looker, the Chief Executive Officer of GSE at all relevant times. Looker's stated reason for not

Because Heublein and Canandaigua could not obtain the consent of all the Defendants, the state court action was not removed to this Court after the filing of the Original Complaint.

Maslowski responded to the Original Complaint in a November 24, 1995, letter addressed to counsel for the Johnsons stating that he was not an employee, alter ego or agent of GSE and that he never had been. Maslowski Letter, attached as Exhibit 2 to Defendants' Response. Counsel for the Johnsons has submitted an affidavit stating that he considered this letter to be an Answer to the Complaint and, therefore, "[a]s a courtesy to the Defendant Maslowski, [he] forwarded a copy of his Answer to the Circuit Clerk of Madison County, Mississippi, and for no other reason." Affidavit of Charles L. Balch, III, at 1–2, ¶ 3, attached as Exhibit A to Plaintiffs' Rebuttal Motion to Remand. Although the Maslowski letter was filed in the state court action on December 7, 1995, the only entry for the docket sheet for that date contains the notation "entered in error."

On January 15, 1996, Defendants GSE and Walker filed a Motion to Dismiss based upon the exclusive choice of forum provision contained in the Promissory Notes. That provision provides that:

> The Maker acknowledges and agrees that irrespective of where executed, this note shall be construed in accordance with the laws of the State of Florida, and venue for any legal action which may be brought hereunder shall be deemed to lie in Pinellas County, Florida.

Promissory Note at 4, attached as Exhibit B to the Original Complaint. On May 3, 1996, counsel for Defendants GSE and Walker filed a Re–Notice of Motion seeking a hearing on their Motion to Dismiss "as soon as

counsel can be heard." Subsequently, the Johnsons, GSE and Walker submitted an Agreed Order, which was signed by the state court judge and filed on June 3, 1996, and which states in relevant part as follows:

> THIS day this cause came before the Court upon the motion *ore tenus* [of the aforementioned parties] ... for an Order acknowledging and approving the voluntary decisions of Defendant Gulf Machinery Sales & Engineering Corp. and Defendant David R. Walker, Individually, to submit to the jurisdiction of this Court and thereby waive the choice of forum provision otherwise available to them, and allowing Defendant Gulf Machinery Sales & Engineering Corp. and Defendant David R. Walker, Individually, fifteen (15) days from the date of entry of said Order to answer Plaintiffs' Complaint....

June 3, 1996, Agreed Order. The remainder of the Agreed Order grants the requests of GSE and Walker to submit to the jurisdiction of the state court and to file their answers within 15 days. *Id.* Neither GSE nor Walker ever filed an answer to the Original Complaint.[9]

On March 6, 1997, the Johnsons, GSE and Walker entered into an agreement entitled Confession of Judgment and Assignment of Claims.[10] GSE and Walker confessed a judgment in favor of the Johnsons, "instead of filing an Answer or other responsive pleading," in the amount of $367,508.99. GSE and Walker also assigned to the Johnsons any and all claims which they might have against Heublein and/or Canandaigua pursuant to the contract between GSE and Heublein. The document also states the following:

> Further, it is the intent and purpose of this assignment to expressly allow the Plaintiffs to represent the Defendants in the

---

agreeing to the removal of the case was to "avoid additional legal fees required to litigate in federal court." Looker Affidavit at 2, ¶ 7.

**9.** The state court judge also summarily dismissed the Heublein and Canandaigua Motions to Dismiss which asserted that jurisdiction was proper in Florida based upon the choice of forum provision contained in the Promissory Notes. September 16, 1996, Order. Although the Order is not entirely clear, it appears that the decision by

the state court judge on these Motions to Dismiss was based, at least in part, on the fact that GSE and Walker agreed to waive the choice of forum provision in the Promissory Notes.

**10.** This document was filed in the state court action on that date, although it was not served on Heublein and Canandaigua until over a month later.

above-styled lawsuit during discovery and in other pretrial matters and at trial, and the Plaintiffs have full and plenary authority to represent the Defendants in this matter. . . .

Further, the Defendants execute this Confession and Judgment and Assignment of Claims with the full understanding the Plaintiffs reserve and retain all rights they may otherwise have against the Defendants. The Plaintiffs agree to forbear on the execution and collection of this confessed judgment if the Defendants voluntarily cooperate during discovery and in other pretrial matters and at trial.

Confession of Judgment at 1–2.

Subsequently, on April 11, 1997, the Johnsons, GSE and Walker ("the current Plaintiffs"), filed a First Amended Complaint in the state court action naming Heublein, Canandaigua and Maslowski as Defendants. The First Amended Complaint bears absolutely no resemblance to the Original Complaint. Rather, the allegations in the First Amended Complaint are based upon the claims assigned to the Johnsons by GSE and Walker in the Confession of Judgment. The First Amended Complaint is quite detailed concerning the course of dealing between GSE, Walker and Heublein pursuant to the contract between those parties. The apparent dispute between GSE and Heublein concerns, *inter alia*, the time frame for the project which was to have been completed by July 26, 1992, and the assessment of liquidated damages by Heublein against GSE, resulting in a subsequent reduction in final payments to GSE, for its alleged failure to complete the project in a timely manner.

The First Amended Complaint recognizes that under the terms of the security agreement between GSE and Heublein, "GSE

granted Heublein a first lien security interest in all of the contract materials in whatever form they may take, including all work in process and finished equipment and permitted Heublein to file a Form UCC–1 with the Florida Department of State." First Amended Complaint at 7, ¶ 23. In apparent contradiction of this statement, the First Amended Complaint also states as follows in Count Ten:

Plaintiffs re-allege and incorporate by reference all allegations made in the original Complaint filed October 25, 1995, with the exception of the allegations against GSE and David Walker which have been resolved pursuant to a confession of Judgment. . . .

First Amended Complaint at 25, ¶ 124.[11]

After receipt of the First Amended Complaint, Heublein and Canandaigua removed the action to this Court on May 1, 1997. The asserted basis of jurisdiction is that all parties are diverse pursuant to 28 U.S.C. § 1332. The Defendants assert that the Maslowski entities are fraudulently joined and that their citizenship should not be considered in determining whether the parties are completely diverse. The current Plaintiffs have filed a Motion to Remand, and this matter is now ripe for decision.

## II. *Analysis*

The current Plaintiffs assert that the removal of this action is prohibited by 28 U.S.C. § 1446(b) which requires that the removal of any action on the basis of diversity jurisdiction must be removed within one year after the commencement of the action. The Plaintiffs further assert that they should not be estopped from asserting the one year time period due to any alleged collusion between the Johnsons, GSE and Walker. Finally, the

---

11. As stated previously, *see supra* at 440, the claims against Heublein and Canandaigua contained in the original Complaint were based upon their alleged conversion of the Evaporator with knowledge of the Johnsons' interest in the equipment. The recognition in ¶ 23 of the First Amended Complaint of the security agreement between GSE and Heublein would appear to extinguish the original claims asserted by the Johnsons against Heublein and Canandaigua for conversion. Another curiosity of the First Amended Complaint is that the Maslowski entities are named by the Plaintiffs as Defendants. The Plaintiffs do not explain how GSE and Walker, as Plaintiffs, can sue their alleged alter ego, Maslowski, as a Defendant. The Court also notes that in his affidavit submitted by the Defendants, Maslowski states that: "Subsequent to the service of the complaint, I have received no further additional pleadings or discovery papers related to this civil action. I was not served with a copy of the First Amended Complaint." Maslowski Affidavit at 2, ¶ 9, attached as Exhibit 5 to Defendants' Response.

Plaintiffs claim that the Maslowski entities were not initially joined to defeat diversity jurisdiction because at the beginning of the state court action, the inclusion of these Defendants did not in fact destroy diversity between the parties. The Plaintiffs do not state why they named the Maslowski entities in their First Amended Complaint or why they have not served any pleadings or other papers in this action on the Maslowski entities since they were served with the Original Complaint.

The Defendants recognize that 28 U.S.C. § 1446(b) prohibits the removal of an action from state court over thirty days after the receipt of the initial pleading in the state court action. Defendants assert, however, that the initial pleading in this matter is the First Amended Complaint, and not the Original Complaint. Defendants claim that in the Original Complaint, the Johnsons failed to assert any actionable claim against Heublein and/or Canandaigua. Furthermore, according to these Defendants, when GSE and Walker settled with the Johnsons by entering into an agreed Confession of Judgment, the original case concluded. Finally, the Defendants assert that the First Amended Complaint contains only the claims arising out of the assignment of a contract dispute between GSE and Heublein. For all of these reasons, the Defendants assert that they have timely removed this new cause of action to this Court.[12]

The Court agrees with the Defendants that the First Amended Complaint states an entirely new cause of action as compared with the Original Complaint filed in this action. Therefore, the Defendants' right to remove this matter was "revived" upon the filing of the First Amended Complaint in state court by the current Plaintiffs.

The seminal case which sets forth the parameters of when a defendant's right to remove a case has been revived is *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962 (7th Cir.1982). In that case, the court recognized an exception to the requirement in 28 U.S.C. § 1446(b) that a case be removed within thirty days of receipt of the complaint. *Id.* at 965.

> The courts, however, have read into the statute an exception for the case where the plaintiff files an amended complaint that so changes the nature of his action as to constitute "substantially a new suit begun that day." *Fletcher v. Hamlet,* 116 U.S. 408, 410, 6 S.Ct. 426, 427, 29 L.Ed. 679 (1886); *see* 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3732, at 727–29 (1976), and cases cited therein. It is idle to pretend that the *Fletcher* test or any of the alternative formulations that the courts sometimes use (e.g., "an entirely new and different suit," *Cliett v. Scott,* 233 F.2d 269, 271 (5th Cir.1956)) are self-defining. The right to revive must be determined in each case with reference to its purposes and those of the 30–day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibilities between state and federal courts.

*Id.* at 965. The *Wilson* court further explained the exception as follows:

> Amendments might fundamentally alter a complaint not because the plaintiff had been trying to mislead the defendant but because new facts had come to light in the course of pretrial discovery. In such a case—where the amended complaint in effect begins a new case—using the 30–day limitation in section 1446(b) to bar removal would not serve the purposes of the limitation in any significant way. The defendant's tactical advantage would be small because whatever favor or disfavor the state court had shown to his defense of the original complaint need not carry over to an amended complaint which by hypothesis kicks off an essentially new lawsuit. And judicial economy would not be promoted by forbidding removal because, again by hypothesis, the defendant is seeking not to

12. Defendants also assert collusive conduct between the Johnsons, GSE and Walker after the filing of the initial Complaint. The Court notes that the previous attorney for GSE and Walker shares office space with the attorney for the Johnsons. The Court further notes that the Plaintiffs have filed several affidavits denying any such collusive conduct. The Court need not address the issue of collusion in order to dispose of the instant Motions before the Court.

start an old case over in a new court but to litigate a new case in the new court.

*Id.* at 966.

Although the parties to this action have not addressed the issue, the cases addressing this removal exception after the 1988 amendment to 28 U.S.C. § 1446(b), are in disagreement concerning the continued viability of the exception in light of the ban on removal of a diversity case "more than 1 year after the commencement of the [state court] action." 28 U.S.C. § 1446(b). *See Jenkins v. Sandoz Pharmaceuticals Corp.,* 965 F.Supp. 861, 866 (N.D.Miss.1997) (discussing several district court cases addressing this issue and concluding, although unnecessary to the decision of the case,[13] that the *Wilson* exception has not survived the amendment to § 1446(b) which prohibits removal of a diversity case after one year). The Court has not located any controlling Fifth Circuit authority on this issue.

With all due respect to the *Jenkins* court, the Court concludes that the *Wilson* exception set forth previously continues to be viable despite the amendment to 28 U.S.C. § 1446(b) prohibiting the removal of a diversity case after one year. The *Wilson* exception, upon which the Defendants rely, is premised upon the creation of an entirely new suit begun on the day that the First Amended Complaint was filed. Because the suit is entirely new, the one-year time limit begins to run anew upon receipt by the Defendants of the new cause of action. Absent any express intent by Congress to overrule or eliminate this particular exception to removal, and absent any controlling Fifth Circuit precedent, the Court concludes that the *Wilson* exception has not been abrogated by

the one-year prohibition on removal of diversity cases contained in 28 U.S.C. § 1446(b).

The Court finds that even though the current Plaintiffs chose to file the First Amended Complaint in the preexisting state court case, the fact remains that the allegations contained in the First Amended Complaint bear no resemblance whatsoever to the allegations of the Original Complaint. Furthermore, the parties to the original action are now aligned in a completely different manner than was the case when the suit originated. GSE and Walker, arguably the only Defendants against which the Johnsons stated a valid cause of action in the Original Complaint, are now named Plaintiffs in this matter. The claims assigned by GSE and Walker to the Johnsons on March 6, 1997, are the sole basis for the allegations contained in the First Amended Complaint filed on April 11, 1997.[14] For these reasons, the Court finds that the First Amended Complaint sets forth an entirely new cause of action against Heublein and Canandaigua which the Johnsons did not have and could not have asserted in the Original Complaint. As such, the removal on May 1, 1997, to this Court was within thirty days of receipt by the Defendants of the First Amended Complaint and was timely under 28 U.S.C. § 1446(b).

The only other fact which would prohibit diversity jurisdiction at this point is the presence of the Maslowski entities as Defendants. As stated previously, the residency of the Maslowski entities for the purposes of diversity jurisdiction is Florida. GSE and Walker are also Florida residents and are now aligned as Plaintiffs in this matter. The Court need not waste needless resources setting forth the law concerning fraudulent joinder. The Court simply concludes that the Plaintiffs, GSE and Walker, cannot possibly

**13.** The *Jenkins* case, as originally filed in state court, was not removable due to the presence of two resident defendants. *Jenkins,* 965 F.Supp. at 866–67. Thus, "there exists no right to removal which the plaintiff's Amended Complaint could revive." *Id.* at 867. The facts of this case are different in that the case as originally filed was removable based upon the diversity of the parties. Heublein and Canandaigua, however, could not obtain the consent of GSE and Walker, who are now named as Plaintiffs in this matter, in order to properly remove this case with the consent of all Defendants. Because this case

could originally have been brought in this Court, the Defendants' preexisting right to removal is subject to revival pursuant to the *Wilson* exception.

**14.** Despite the addition of one paragraph incorporating all of the allegations contained in the Original Complaint, the Court concludes that the First Amended Complaint states an entirely new and different cause of action against Heublein and Canandaigua than did the Original Complaint.

sue their own alleged alter ego in this lawsuit. The Court further concludes that the Plaintiffs do not consider the Maslowski entities to be proper Defendants as evidenced by their failure to serve these Defendants with any pleadings, documents or other papers related to this matter, except for the service of the Original Complaint. For this reason, the Maslowski entities should be dismissed as Defendants from this case.

### III. *Conclusion*

For the reasons set forth in this opinion, the Court concludes that jurisdiction is proper in this Court because the First Amended Complaint states an entirely new cause of action against the Defendants which was not previously available to the Plaintiffs. For this reason, this action was properly and timely removed to this Court within thirty days of receipt by the Defendants of the First Amended Complaint. Plaintiffs' request for remand to state court should therefore be denied.

IT IS THEREFORE ORDERED that the Plaintiffs' Motion to Remand [4–1] should be and hereby is denied.

IT IS FURTHER ORDERED that the Plaintiffs' Rebuttal Motion to Remand should be and hereby is denied.

IT IS FURTHER ORDERED that the Motion to Strike Rebuttal Motion to Remand [11–1] should be and hereby is denied.

IT IS FURTHER ORDERED that Defendants Walter Maslowski a/k/a and d/b/a SETC and/or SETC, Inc. and/or Salisbury, Etc., are hereby finally dismissed.

IT IS FURTHER ORDERED that the parties shall contact the United States Magistrate Judge assigned to this matter within 10 days of receipt of this Opinion and Order to schedule a case management conference.

IT IS FURTHER ORDERED that the Plaintiffs shall respond to the pending Motion to Dismiss filed by the Defendants on or before November 14, 1997.

SO ORDERED.